**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

DOUGLAS CONDIT, a minor,
by and through his parent and guardian,
Stephany Condit,

      Plaintiff,

v.

UNITED STATES OF AMERICA,

      Defendant.

---

**COMPLAINT FOR DAMAGES UNDER THE FEDERAL TORT CLAIMS ACT**

---

COMES NOW Plaintiff Douglas Condit, a minor, by and through his parent and guardian, Stephany Condit, by and through William Babich of THE LAW FIRM OF WILLIAM BABICH, LLC, and complains and alleges against the United States of America as follows:

**JURISDICTION, VENUE, and CONDITIONS PRECEDENT**

1. At all times pertinent to this action, Douglas Condit is the dependent minor son of Stephany Condit, both of whom reside at 2925 Dynamic Drive, City of Colorado Springs, County of El Paso, State of Colorado, and thus are residents of the District of Colorado.

2. The claims herein are brought against the United States pursuant to the Federal Tort Claims Act (28 U.S.C. §2671, *et seq*.) and 28 U.S.C. §1346(b)(1), for money damages as compensation for personal injuries that were caused by the negligent and wrongful acts and omissions of employees of the United States government while acting within the scope of their

offices and employment, under circumstances where the United States, if a private person, would be liable to the Plaintiff in accordance with the laws of the State of Colorado.

3. Venue is proper in that the acts and omissions forming the basis of these claims occurred in the District of Colorado, and arose from substandard medical care provided at the United States Air Force Academy in Colorado Springs, Colorado.

4. On July 6, 2005, a Claim for Damage Injury or Death was submitted to the United States Department of the Air Force (hereafter referred to as "the Air Force") with regard to damages resulting from substandard care rendered to the minor, Douglas Condit. Minor Douglas Condit continued to receive additional medical care, and the undersigned counsel subsequently retained in February, 2008. There has been compliance with the provisions of 28 U.S.C. § 2401(b) and administrative remedies have been exhausted pursuant to 28 U.S.C. §2675(a) as more than six months have past and the agency has not made a final disposition of the claim.

5. The care was rendered by military physicians stationed at the U.S.A.F. Academy (hereinafter "Academy") acting within the scope of their office and employment with the United States government.

6. Pursuant to Colorado law (Colorado Revised Statute §13-20-602(3)(a)), the undersigned attorney hereby certifies that he has consulted with at least one physician with expertise in the area of the alleged negligent conduct as set forth in this Complaint; and, based upon the review of the known facts, including such records, documents and other materials which the professional has found relevant to the allegations of negligent conduct, has concluded that the filing of a medical negligence claim would not lack substantial justification within the meaning of C.R.S. §13-17-102(4). Further, the person(s) consulted meet(s) the requirements of C.R.S. §13-64-401.

**PRELIMINARY ALLEGATIONS**

7. On March 2, 2002, Douglas Condit was a minor dependant of Stephany Condit and a Major in the United States Air Force stationed at the U.S.A.F. Academy (hereinafter "Academy") in Colorado Springs, Colorado.

8. Douglas Condit, the four-year old son, because of his father's active military service, received medical care at the Academy Emergency Room on March 2, 2002, for a fractured left forearm.

9. The initial exam was conducted in the Emergency Room by Dr. Jon Rawling, who noted deformity mid ulnar forearm. An x-ray of the forearm interpreted by Dr. Richard R. Reinholtz, a radiologist, found mid-diaphyseal ulnar fracture. Dr. Reinholtz indicated in the records that he could not rule out a radial head dislocation. A radial head dislocation in conjunction with ulna fracture is known as "Monteggia fracture."

10. Radial head dislocation must be properly identified and promptly reduced under the applicable standard of care.

11. No action was taken by the military physicians to rule out radial head dislocation and Monteggia fracture.

12. Additionally, radial head dislocation was there to be seen on the radiographs taken and reviewed. Dr. Reinholtz fell below the standard of care expected of a reasonable and prudent radiologist in his interpretation of the April 2, 2002, left forearm radiographs as the radial head dislocation and disruption of the radiocapitellar line is evident on two of the three radiographs.

13. Douglas' forearm was placed in a splint with a sling at the Academy Emergency Room, and on March 5, 2002, was subsequently evaluated by Dr. Christopher G. Palmer at the

Academy's Orthopedic Clinic, who diagnosed midshaft ulnar fracture, and failed to properly diagnose radial head dislocation and Monteggia fracture.

14.  Douglas was subsequently seen at the Academy's Orthopedic Clinic by Physician Assistant Michael Clark, and had radiographic studies reviewed by Dr. Reinholtz and Dr. Richard Karsh.

15.  Dr. Reinholtz made no mention of the abnormal alignment of the radius to the capitellum on the follow-up examination, which also constitutes a violation of the standard of care for a radiologist.

16.  Dr. Karsh violated the standard of care by failing to identify the anterior dislocation of the radial head and making no mention of the abnormal alignment of the radial head in which the radiocapitellar line is disrupted, consistent with radial head dislocation and Monteggia fracture-dislocation, when he interpreted the April 24, 2002, films of the left forearm and compared them with the films of March 2, 2002.  The March 2, 2002, films were the same films for which Dr. Reinholtz raised the possibility of radial head dislocation.

17.  The radial head dislocation was not properly diagnosed until Dr. Brannon Moye, at Shands Hospital at the University of Florida, found a dislocation of the left radius.  Dr. Moye noted that given the history of the ulnar fracture, the residual dislocation was a result of the undiagnosed Monteggia fracture.

18.  Douglas Condit was subsequently evaluated by Dr. Laurel Benson, of University of Colorado and The Children's Hospital, who indicated that the long-term consequences of his chronic traumatic radial head dislocation outweighed the existing lack of significant range of motion or pain. Without surgery, Douglas Condit was expected to have a gradual drift in his

4

elbow carrying angle, an increased risk of degenerative joint disease at his elbow joint and probably, most significantly, a loss of stability over time.

19. Dr. Benson recommended an arthrotomy of the elbow with reconstruction of the annular ligament and relocation of radial head, which was performed on April 17, 2006. In surgery, Dr. Benson found the radial head lying superior to the capsule instead of inside the capsule. The radial head was markedly subluxed and spectacularly unstable. The hyperextension deformity was corrected and the osteotomy was placed into the flexion position to improve the stability of the radial head.

20. A second surgery to reconstruct Douglas's annular ligament was performed by Dr. Benson on May 18, 2006. A radiograph had revealed that the radial had subluxed anteriorly. In this surgery, Dr. Benson took a triceps graft to reconstruct his annular ligament. During this surgery, Dr. Benson tensioned the graft casting the forearm (palm up) with the hope that the bony malformation would remodel with time and a reduced radial head.

21. Douglas underwent substantial physical therapy at Memorial Springs, as directed by Dr. John C. Leopold, ABC Pediatrics, from June 13, 2006 through August 22, 2006, to try to improve his range of motion.

22. In a follow-up examination on July 24, 2006, Dr. Benson noted that x-rays revealed that the pin in Douglas' arm impinging on his olecranon fossa and hanging up on soft tissue distally. On August 7, 2006, under anesthesia, Douglas underwent a third procedure wherein Dr. Benson performed a removal of deep implant and manipulation of elbow and forearm.

23. Subsequently, Dr. Benson saw Douglas for several visits after his pin removal and manipulation. At a maximum, she observed only 5-10 degrees of pronation compared to 60 degrees that she would normally expect in his age group.

24. Dr. Benson evaluated Douglas again on August 29, 2006, noting that Douglas still lacked approximately 35° of full extension and approximately 25° of full flexion.

25. On follow-up exam with Dr. Benson, Douglas' pronation was 0 degrees and pronation and supination combined was probably about 20°. He was provided with a forearm orthosis to wear for all of his outdoor activities. Most importantly, as a result of the undiagnosed and untreated Monteggia fracture, Dr. Benson noted that Douglas was already beginning to demonstrate some radial head overgrowth.

26. Douglas underwent a thorough and detailed Functional Capacity Evaluation (FCE) performed by Pat McKenna, OTR, on August 15, 2008, which found certain permanent restrictions and impairments.

27. In her report dated February 17, 2009, Dr. Benson concluded that had the Monteggia fracture been diagnosed at the time of Douglas' initial injury, his outcome would have been markedly different, with a probable full functional outcome.

28. Douglas is likely to require additional surgical procedures, none of which will restore a normal and function. The expected surgical procedure of resection of the radial head will likely lead to further degenerative joint disease and pain at the distal radioulnar joint (wrist), as well as at the elbow.

29. Further, Douglas will likely experience pain with activities as he ages, and will have increased risk of degenerative arthritis in his left elbow earlier in his lifespan, and will be at greater risk of exacerbation and re-injury.

30. Douglas Condit's elbow is scarred and visibly deformed as a result of the medical negligence set forth herein.

31. Plaintiff would be entitled to pursue a claim for money damages for medical malpractice and negligence under the laws of the State of Colorado against the military physicians and hospital described herein had they been private actors and not employees or agents of the United States government.

32. As a direct and proximate result of the acts and omissions of Defendant, Douglas' injury was not properly diagnosed or treated, resulting in injuries, damages and losses including, but not limited to the following:

  A. Past and future economic damages, including but not limited to: medical, surgical, hospital and related expenses; travel expenses; impairment of earning capacity; loss of time and income; and loss of opportunity, tuition, and benefits from the military;

  B. Past and future noneconomic losses including: physical pain and mental suffering; inconvenience; impairment of the quality and enjoyment of life; and emotional distress;

  C. Permanent impairment and disfigurement;

  D. Post-judgment interest, allowed by law;

  E. Costs, allowed by law; and

  F. Attorney fees allowed by law, if there be any frivolous or groundless denial or defense asserted.

## **FIRST CLAIM FOR RELIEF**
**(Medical Negligence)**

33. The Preliminary Allegations, so far as necessary to this claim for relief, are incorporated by reference, as though set forth verbatim herein.

34. Defendant owed a duty to exercise the standard of medical skill and care ordinarily exercised in the State of Colorado.

35. Defendant failed to meet the applicable standard of medical skill and care in the treatment and diagnosis of Douglas Condit's condition.

36. As a result of Defendant's negligence and substandard care, Douglas Condit's injury was not properly diagnosed and treated, resulting in injuries, damages, and losses as set forth in this Complaint.

WHEREFORE, Plaintiff prays that judgment be entered against Defendant United States for compensatory damages in an amount to be determined by the Court at trial; plus post judgment interest as allowed by law; plus costs allowed by law; and attorney fees allowed by law if there be any frivolous or groundless denial or defense; and such other and further relief as the Court may deem proper and just.

Respectfully submitted,

THE LAW FIRM OF WILLIAM BABICH, LLC
Attorneys for Plaintiff

*[Original signature on file at*
*THE LAW FIRM OF WILLIAM BABICH, LLC]*

*s/ William Babich_____*
William Babich
1873 South Bellaire Street
Suite 1125
Denver, Colorado 80222-4359
(303) 691-5222

<u>Plaintiff's Address:</u>
2925 Dynamic Drive, Colorado Springs, CO 80920